# EXHIBIT A

**MANDELBAUM BARRETT, PC**
Joshua S. Bauchner (#051242013)
3 Becker Farm Road, Suite 105
Roseland, New Jersey 07068
(973) 736-4600
jbauchner@mblawfirm.com
*Attorneys for Plaintiff*

---------------------------------------------------------------X

NORTHROCK MINERALS LLC,

                                *Plaintiff,*

                - against -

JOSEPH COHEN and SNOW JOE LLC,

                            *Defendants.*

---------------------------------------------------------------X

SUPERIOR COURT OF NEW JERSEY
HUDSON COUNTY - LAW DIVISION

DOCKET NO.: HUD-L-

<u>Civil Action</u>

<u>**COMPLAINT**</u>

Plaintiff, NORTHROCK MINERALS LLC ("**Plaintiff**" or "**Lender**"), files this Complaint against Defendants, JOSEPH COHEN ("**Mr. Cohen**" or "**Guarantor**") and SNOW JOE LLC ("**Snow Joe**" or "**Borrower**," and collectively with Mr. Cohen, "**Defendants**"), and alleges as follows:

<u>**INTRODUCTION**</u>

1.      This is a straightforward lawsuit to collect sums owed due to Borrower's failure to timely pay its debts to Lender, and Mr. Cohen's failure to abide by the terms of his unconditional guaranties.

2.      Beginning in August 2022, in connection with, and subsequent to, the sale of Plaintiff's assets to Snow Joe, Plaintiff and Snow Joe entered into two agreements whereby Snow Joe agreed to make scheduled payments to Plaintiff: (1) a purchase money promissory note in the amount of $4,500,000; and (2) a subsequent agreement providing for payment of various items including past payroll, rent, and contractual deposits totaling $1,260,661.71 pursuant to a payment schedule.

1

3.      Defendant Mr. Cohen unconditionally guaranteed all payments due under both agreements.

4.      Snow Joe has failed to comply with either payment schedule, and Mr. Cohen has failed to make any payments under his guaranties. Accordingly, both Defendants are in default, prompting this Complaint.

## PARTIES

5.      Plaintiff is a New York limited liability company with its principal place of business located at 777 Chestnut Ridge Road, Chestnut Ridge, New York 10977.

6.      Mr. Cohen is an individual residing at 71 Laight Street, Apt. 5B, New York, New York.

7.      Defendant Snow Joe is a New York limited liability company with its principal place of business located at 221 River Street, Suite 1300, Hoboken, New Jersey 07030.

## FACTUAL ALLEGATIONS

8.      In or about August 2022, Plaintiff agreed to sell, and Borrower agreed to purchase the assets of Plaintiff. As part of the transaction, Plaintiff provided Borrower with seller financing in the form of a promissory note. Subsequently, in or about November 2022, the parties executed a separate agreement covering the repayment of other liquidated amounts due to Plaintiff from Snow Joe.

**The Promissory Note**

9.      On or about August 24, 2022, Snow Joe executed a Promissory Note in the amount of $4,500,000 (the "**Promissory Note**"), requiring consecutive monthly payments commencing on September 1, 2022, and continuing until March 1, 2024, at which time all principal and interest

2

would be paid in full. A true and correct copy of the Promissory Note is attached hereto as Exhibit 1 and incorporated herein by reference.

10.     Under the Promissory Note, interest accrues at the rate of 4.5% per annum, and includes a late payment fee in the amount of 5%.

11.     Under Section 5, Borrower is in default if "Borrower fails to make any payment on the Loan in accordance with the terms of this Note within five (5) Business Days after Lender provides Borrower of notice of such failure."

12.     Pursuant to Section 7 of the Promissory Note, upon an Event of Default, at Lender's option, "the entire unpaid principal amount of the Loan together with interest accrued and unpaid thereon and all other amounts which may be due and payable under this Note shall, at the option of Noteholder, without notice of any kind, immediately become due and payable by Borrower," and default interest at the rate of eighteen percent (18%) per annum shall accrue on the balance.

13.     In addition, under Section 9 of the Promissory Note, Lender is entitled to collect its costs and reasonable attorney's fees incurred in enforcing the Promissory Note.

**The Guaranty**

14.     On or about August 24, 2022, Mr. Cohen executed a Guaranty in favor Lender securing the timely payment of any and all amounts due by Snow Joe under the Promissory Note (the "**Guaranty**"). A true and correct copy of the Guaranty is attached hereto as Exhibit 2 and incorporated herein by reference.

15.     Specifically, Mr. Cohen agreed as follows: "The Guarantor absolutely, unconditionally, and irrevocably guarantees, as surety, the punctual payment and performance, when due, whether at stated maturity, by acceleration, or otherwise, of all present and future

3

obligations, liabilities, covenants, and agreements required to be observed, performed, or paid by the Borrower whether for principal, interest or otherwise under the Note." *See* Exhibit 2.

16.     Under Section 6 of the Guaranty, Mr. Cohen also agreed to pay Plaintiff's costs and reasonable attorney's fees if Plaintiff prevails in an action to enforce the Guaranty.

**The Payment Agreement**

17.     Subsequently, on or about November 14, 2022, Snow Joe, Mr. Cohen, and Plaintiff executed an "Agreement," whereby Snow Joe agreed to pay Plaintiff $1,260,661.71, via weekly scheduled payments beginning on November 21, 2022, and continuing through May 15, 2023, at which time all principal and interest would be paid in full (the "**Payment Agreement**"). A true and correct copy of the Payment Agreement is attached hereto as Exhibit 3 and incorporated herein by reference.

18.     Under the Payment Agreement, interest accrues at the rate of 10% per annum, and includes a late payment fee in the amount of 5%.

19.     In Section 3, Mr. Cohen agreed to broadly guaranty all payments under the Payment Agreement as follows: "Cohen personally, absolutely, unconditionally, and irrevocably guarantees, as surety, the punctual payment and performance, when due, whether at the stated payment date, by acceleration, or otherwise, of all present and future obligations, liabilities, covenants, and agreements required to be observed, performed, or paid by Snow Joe under this Agreement, whether principal, interest, late fees or otherwise. No written demand for payment by Creditor shall be required in connection with the foregoing guaranty by Cohen."

20.     Section 4 provides for, upon payment default, the reinstatement of the full amount of the previously compromised amount becomes due, as follows: "In the event that the Creditor does not receive the full amount of its Claims pursuant to this Agreement, the Creditor will retain

all rights and remedies available to it that it had as if this Agreement had not existed and the Creditor shall be entitled to assert the full amount of its original Claims, less any Payments, in any subsequent action or proceeding instituted to collect its Claims."

21.     Section 20 of the Payment Agreement provides that the prevailing party in any litigation shall be entitled to receive reimbursement of costs and reasonable attorney's fees.

**Defendants' Prior and Ongoing Defaults**

22.     Borrower failed to make two required payments under the Promissory Note: (a) February 1, 2023, and (2) March 1, 2023.

23.     Borrower failed to make the following payments under the Payment Agreement: (a) January 30, 2023, (b) February 6, 2023, (c) February 13, 2023, (d) February 20, 2023, (e) February 27, 2023, and (f) March 6, 2023.

24.     On or about February 14, 2023, Plaintiff sent a notice of default and demand for payment to Snow Joe and Mr. Cohen (the "**Notice of Default**"), a true and correct copy of which is attached hereto as Exhibit 4 and incorporated herein by reference.

25.     Following the Notice of Default, Borrower made payments under the Promissory Note totaling $101,250, and payments under the Payment Agreement totaling $108,245.32; however, Borrower, failed to cure and remains in default under the Promissory Note and Payment Agreement.

26.     Borrower's last monthly payment under the Promissory Note was on or about September 1, 2023; thus, as of February 1, 2024, Borrower will be six months in arrears under the Promissory Note.

4879-0886-2112, v. 1

27.     Borrower also has failed to meet its payment obligations under the Payment Agreement.  Borrower's current obligations to Plaintiff under the Promissory Note and Payment Agreement are summarized as follows:

| Description | Amount |
|---|---:|
| Promissory Note (Principal) | $4,500,000.00 |
| Interest on Promissory Note | $84,375.00 |
| Calcium (Payment Agreement) | $744,528.25 |
| Other materials (Payment Agreement) | $860,662.27 |
| Interest on Calcium and Other Materials | $160,000.00 |
| Port Rent Reimbursement | $37,125.00 |
| **Total** | **$6,386,690.52** |

## COUNT I

### BREACH OF CONTRACT – PROMISSORY NOTE
(Against Snow Joe)

28.     Plaintiff re-alleges and incorporates by reference each allegation averred in the preceding paragraphs.

29.     The Promissory Note is a valid and binding contract.

30.     Plaintiff performed all of its obligations and conditions precedent to demand strict compliance with the terms of the Promissory Note.

31.     Snow Joe is contractually required to make monthly payments under the Promissory Note.

32.     Snow Joe breached its contractual obligations by failing to make timely required payments.

33.     Under Section 7 of the Promissory Note, Plaintiff has the right, which it exercised, to accelerate the full amount owed under the Promissory Note.

4879-0886-2112, v. 1

34.     Despite written notice, demand, and an opportunity to cure, Snow Joe remains in payment default under the Promissory Note.

WHEREFORE, Plaintiff requests this Honorable Court enter a judgment against Snow Joe and in favor of Plaintiff in an amount exceeding $4,500,000, with the exact amount to be determined at trial, plus pre- and post-judgment, Plaintiff's costs, including reasonable attorney's fees incurred in connection with its collection efforts and this case, and such other and further relief as this Court may deem just and proper.

## COUNT II

### BREACH OF CONTRACT – PAYMENT AGREEMENT
(Against Snow Joe)

35.     Plaintiff re-alleges and incorporates by reference each allegation averred in the preceding paragraphs.

36.     The Payment Agreement is a valid and binding contract.

37.     Plaintiff performed all of its obligations and conditions precedent to demand strict compliance with the terms of the Payment Agreement.

38.     Snow Joe is contractually required to make payments under the Payment Agreement.

39.     Snow Joe breached its contractual obligations under the Payment Agreement by failing to make timely required payments.

40.     Under Section 4 of the Payment Agreement, Plaintiff has the right, which it exercised, to reinstate all amounts due prior to the Payment Agreement.

41.     Despite written notice, demand, and an opportunity to cure, Snow Joe remains in default under the Payment Agreement.

4879-0886-2112, v. 1

42.     WHEREFORE, Plaintiff requests this Honorable Court enter a judgment against Snow Joe and in favor of Plaintiff in an amount exceeding $1,765,000, with the exact amount to be determined at trial, plus pre- and post-judgment, Plaintiff's costs, including reasonable attorney's fees incurred in connection with its collection efforts and this case, and such other and further relief as this Court may deem just and proper.

## COUNT III

### BREACH OF CONTRACT – GUARANTY
(Against Mr. Cohen)

43.     Plaintiff re-alleges and incorporates by reference each allegation averred in the preceding paragraphs.

44.     The Guaranty is a valid and binding contract.

45.     Plaintiff performed all of its obligations and conditions precedent to demand strict compliance with the terms of the Guaranty.

46.     Snow Joe breached its contractual payment obligations under the Promissory Note.

47.     Under Section 7 of the Promissory Note, Plaintiff has the right, which it exercised, to accelerate the full amount owed under the Promissory Note.

48.     Under the express terms of the Guaranty, Mr. Cohen is contractually liable to Plaintiff for the full amount of principal, interest, and fees due under the Promissory Note.

49.     Mr. Cohen has failed to make any payments under the Guaranty and remains in default.

50.     WHEREFORE, Plaintiff requests this Honorable Court enter a judgment against Mr. Cohen and in favor of Plaintiff in an amount exceeding $4,500,000, with the exact amount to be determined at trial, plus pre- and post-judgment, Plaintiff's costs, including reasonable

4879-0886-2112, v. 1

attorney's fees incurred in connection with its collection efforts and this case, and such other and further relief as this Court may deem just and proper.

## COUNT IV

### BREACH OF CONTRACT – PAYMENT AGREEMENT
(Against Mr. Cohen)

51.     Plaintiff re-alleges and incorporates by reference each allegation averred in the preceding paragraphs.

52.     The Payment Agreement is a valid and binding contract.

53.     Plaintiff performed all of its obligations and conditions precedent to demanding strict compliance with the terms of the Payment Agreement.

54.     Snow Joe is contractually required to make payments under the Payment Agreement.

55.     Snow Joe breached its contractual obligations by failing to make timely required payments.

56.     Plaintiff performed all of its obligations and conditions precedent to demand strict compliance with the terms of the Payment Agreement.

57.     Under Section 4 of the Payment Agreement, Plaintiff has the right, which it exercised, to reinstate all amounts due prior to the Payment Agreement.

58.     Under the express terms of Section 3, Mr. Cohen is contractually liable to Plaintiff for the full amount owed under the Payment Agreement.

59.     Despite written demand, Mr. Cohen has failed to make any payments under the Guaranty and remains in default.

60.     WHEREFORE, Plaintiff requests this Honorable Court enter a judgment against Mr. Cohen and in favor of Plaintiff in the amount of at least $1,765,000, with the exact amount to

4879-0886-2112, v. 1

be determined at trial, plus pre- and post-judgment, Plaintiff's costs, including reasonable attorney's fees incurred in connection with its collection efforts and this case, and such other and further relief as this Court may deem just and proper.

Dated:  Roseland, New Jersey        MANDELBAUM BARRETT, PC
       January 26, 2024

            *s/Joshua S. Bauchner*
            Joshua S. Bauchner, Esq.

            *Attorneys for Plaintiffs*

## CERTIFICATION OF NO OTHER PARTIES/ACTIONS

I, Joshua S. Bauchner, Esq., attorney for the Plaintiff in the within action, hereby certify that to the best of my knowledge that the matter in controversy is not the subject of any other action pending in any court or any arbitration proceeding and no other action or arbitration proceeding is contemplated.  Further, I know of no other party who should be joined in this action.

Dated:  Roseland, New Jersey
       January 26, 2024       *s/Joshua S. Bauchner*
                   Joshua S. Bauchner, Esq.

## RULE 1:38-7 CERTIFICATION

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

Dated:  Roseland, New Jersey
       January 26, 2024       *s/Joshua S. Bauchner*
                   Joshua S. Bauchner, Esq.

4879-0886-2112, v. 1

## <u>DESIGNATION OF TRIAL COUNSEL</u>

Pursuant to Rule 4:25-4, Joshua S. Bauchner, Esq., of Mandelbaum Barrett is hereby designated as trial counsel for the within matter.

Dated:  Roseland, New Jersey
      January 26, 2024           <u>*s/Joshua S. Bauchner*</u>
                              Joshua S. Bauchner, Esq.

4879-0886-2112, v. 1

# PROMISSORY NOTE

| $4,500,000 | Rockland County, New York |
|---|---|
| | August 24, 2022 |

FOR VALUE RECEIVED, Snow Joe LLC, a New York limited liability company (the "**Borrower**") hereby unconditionally promises to pay to the order of Northrock Minerals LLC, a New York limited liability company (together with its successors and/or assigns, as their interests may appear, the "**Noteholder**") the principal amount of four million five hundred thousand dollars ($4,500,000) (the "**Loan**"), together with all accrued interest thereon, as provided in this Promissory Note (this "**Note**").

1.    Payment Dates.

    (a)    Payment Dates. The Loan is a seller-financed interest only loan. The Loan shall be payable in eighteen (18) equal consecutive monthly installments of interest on the principal amount of the loan equal to sixteen thousand eight hundred and seventy-five dollars ($16,875.00) beginning on September 1, 2022 and every month thereafter until February 1, 2024. On March 1, 2024 all amounts then outstanding under this Note, including principal, accrued and unpaid interest shall be due and payable. A copy of the Loan's payment schedule, assuming no partial prepayment, is attached hereto as **Exhibit "A"**

    (b)    Late Payment.  If Borrower shall fail to make any payment under the terms of this Note within five (5) days after the date on which such payment is due hereunder, Borrower shall pay to Noteholder, on demand, a late charge equal to five percent (5%) of such payment.

    (c)    Prepayment. The Borrower may prepay the Loan in whole or in part at any time or from time to time without penalty or premium by paying the principal amount to be prepaid together with accrued interest thereon to the date of prepayment.

2.    Interest Rate. At all times when no Event of Default exists hereunder, Principal amounts outstanding under this Note shall bear interest at a rate per annum (the "**Interest Rate**") equal to four and a half percent (4.5%) per annum.

3.    Payment Mechanics.

    (a)    Manner of Payment. All payments of principal and interest shall be made in US dollars no later than 12:00 PM on the date on which such payment is due. Such payments shall be made by cashier's check, certified check, or wire transfer of immediately available funds to the Noteholder's account at a bank specified by the Noteholder in writing to the Borrower from time to time.

    (b)    Application of Payments. All payments shall be applied, *first*, to fees or charges outstanding under this Note, *second*, to accrued interest, and, *third*, to principal outstanding under this Note.

(c)    <u>Business Day</u>. Whenever any payment hereunder is due on a day that is not a Business Day, such payment shall be made on the next succeeding Business Day, and interest shall be calculated to include such extension. "**Business Day**" means a day other than Saturday, Sunday, or other day on which commercial banks in New York, NY are authorized or required by law to close.

4.    <u>Representations and Warranties</u>. The Borrower represents and warrants to the Noteholder as follows:

(a)    <u>Existence</u>. The Borrower is a limited liability company duly formed, validly existing, and in good standing under the laws of the state of its organization. The Borrower has the requisite power and authority to own, lease, and operate its property, and to carry on its business.

(b)    <u>Compliance with Law</u>. The Borrower is in compliance with all laws, statutes, ordinances, rules, and regulations applicable to or binding on the Borrower, its property, and business.

(c)    <u>Power and Authority</u>. The Borrower has the requisite power and authority to execute, deliver, and perform its obligations under this Note.

(d)    <u>Authorization; Execution and Delivery</u>. The execution and delivery of this Note by the Borrower and the performance of its obligations hereunder have been duly authorized by all necessary action in accordance with applicable law. The Borrower has duly executed and delivered this Note.

5.    <u>Event of Default</u>. The occurrence of any of the following shall constitute an "**Event of Default**" hereunder: (a) the Borrower fails to make any payment on the Loan in accordance with the terms of this Note within five (5) Business Days after Lender provides Borrower of notice of such failure; (b) the failure of Borrower to perform its obligations strictly in accordance with the terms of this Note, which failure is not cured within fifteen (15) days after notice thereof from Noteholder to Borrower; (c) any breach of any representation or warranty of any of the Borrower hereunder in any material respect; (d) Borrower is in violation in any material of any of its obligations (including but not limited to, any indemnification obligations) under that certain Asset Purchase Agreement dated August 3, 2022, by and between, Noteholder, as seller, and Borrower, as purchaser; (c) Borrower terminates or dissolves, has its charter forfeited, becomes insolvent, a receiver is appointed for any part, makes an assignment for the benefit of creditors, or any proceeding is commenced either by Borrower under any bankruptcy or insolvency laws, which in the case of an involuntary proceeding is not dismissed within sixty (60) days.

6.    <u>Notice of Event of Default.</u> As soon as possible after it becomes aware that an Event of Default has occurred, and in any event within five (5) Business Days, the Borrower shall notify the Noteholder in writing of the nature and extent of such Event of Default and the action, if any, it has taken or proposes to take with respect to such Event of Default.

7.    <u>Remedies</u>.  Upon the occurrence of an Event of Default: (a) the entire unpaid principal amount of the Loan together with all interest accrued and unpaid thereon and all other amounts which may be due and payable under this Note shall, at the option of Noteholder, without

notice of any kind, immediately become due and payable by Borrower to Noteholder; (b) Noteholder shall have all of the rights, powers and remedies available under the terms of this Note and all applicable laws; and (c) "**Default Interest**" at the rate of eighteen percent (18%) per annum shall accrue on any unpaid Principal Amount, until all of the outstanding principal amount of the Loan and interest and fees due hereunder have been paid.

8.     <u>Certain Waivers and Covenants of Borrower</u>.    Borrower and all endorsers, guarantors and other parties who may now or in the future be primarily or secondarily liable for the payment of the indebtedness evidenced by this Note, hereby severally **waives presentment and demand for payment, notice of non-payment, dishonor, protest and demand, and notice of protest of this Note**, and expressly agree that this Note or any payment hereunder may be extended from time to time without in any way affecting the liability of Borrower, guarantors, endorsers or other liable parties.

9.     <u>Enforcement Costs; Certain Other Covenants of Borrower</u>.  If any dispute arises from this or relating to this Note or any guaranty securing this Note, the losing party agrees to pay the prevailing party all costs incurred in resolving the dispute, including court costs and reasonable attorneys' fees, whether or not any judgment has been confessed or suit has been filed.  Borrower agrees to perform and comply with each of the terms and provisions contained in this Note.  No release of any security for the payment of this Note or extension of time for payment of this Note, and no alteration, modification, amendment or waiver of any provision of this Note, shall release, discharge, modify, change or affect the liability of Borrower under this Note.

10.     <u>Pursuit of Remedies; Nonwaiver</u>.  The rights and remedies of Noteholder under this Note shall be cumulative and concurrent and may be pursued singularly, successively or together at the sole discretion of Noteholder, and may be exercised as often as occasion therefore shall occur.  No failure or delay on the part of Noteholder in exercising any right, remedy or power under this Note or failure to exercise the same shall operate as a waiver in whole or in part of any such right, remedy or power.  No notice to or demand on Borrower shall be deemed to be a waiver of the obligation of Borrower or of the right of Noteholder to take further action without further notice or demand as provided in this Note. By accepting payment after the due date of any amount payable under the terms of this Note, Noteholder shall not be deemed to waive the right either to require prompt payment when due of all other amounts payable under the terms of this Note or to declare an Event of Default for the failure to effect such prompt payment of any such other amount. No course of dealing or conduct shall be effective to amend, modify, waive, release, or change any provisions of this Note.

11.     <u>Notices</u>. All notices and other communications relating to this Note shall be in writing and shall be deemed given upon the first to occur of (x) deposit with the United States Postal Service or overnight courier service, properly addressed and postage prepaid; (y) transmittal by facsimile or e-mail properly addressed (with written acknowledgment from the intended recipient such as "return receipt requested" function, return e-mail, or other written acknowledgment); or (z) actual receipt by an employee or agent of the other party. Notices hereunder shall be sent to the following addresses, or to such other address as such party shall specify in writing:

(a)     If to the Borrower:

221 River Street, #1300
Hoboken, NJ
Attention: Accounts Payable
E-mail: ap@snowjoe.com
With a copy to: legal@snowjoe.com

(b)     If to the Noteholder:

Northrock Minerals LLC
c/o Emerald Empire
777 Chestnut Ridge Rd, Suite 301
Chestnut Ridge, NY 10977
Attn: Moshe Wechsler
Email: moshe@emeraldempireinc.com

With a copy (which shall not constitute notice) to:

Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street
27th Floor
Baltimore, MD 21202
Attn:  Elliott Engel, Esq.
Email: EE@nqgrg.com

12.     <u>Governing Law</u>. This Note and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based on, arising out of, or relating to this Note and the transactions contemplated hereby shall be governed by and construed in accordance with the laws of the State of New York, without regard to any principles of conflicts of laws.

13.     <u>Disputes</u>.

(a)     <u>Submission to Jurisdiction</u>. The Borrower and Noteholder irrevocably and unconditionally (A) agree that any action, suit, or proceeding arising from or relating to this Note may be brought in the courts of the State of New York sitting in Rockland County, and in the United States District Court for the Southern District of New York, and (B) submit to the exclusive jurisdiction of such courts in any such action, suit, or proceeding.

(b)     <u>Venue</u>. The Borrower and Noteholder irrevocably and unconditionally waive, to the fullest extent permitted by law, (i) any objection that they may now or hereafter have to the laying of venue in any action, suit, or proceeding relating to this Note in any court referred to in <u>subsection (a)</u> above, and (ii) the defense of inconvenient forum to the maintenance of such action, suit, or proceeding in any such court.

(c)     <u>Waiver of Jury Trial</u>. THE BORROWER AND NOTEHOLDER HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY

LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY, WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY BORROWER AND NOTEHOLDER, AND BORROWER AND NOTEHOLDER EACH HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. BORROWER FURTHER REPRESENTS THAT BORROWER HAS BEEN REPRESENTED IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF BORROWER'S OWN FREE WILL, AND THAT BORROWER HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

14.   <u>Integration</u>. This Note constitutes the entire contract between the Borrower and the Noteholder with respect to the subject matter hereof and supersedes all previous agreements and understandings, oral or written, with respect thereto.

15.   <u>Amendments and Waivers</u>. No term of this Note may be waived, modified, or amended, except by an instrument in writing signed by the Borrower and the Noteholder. Any waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given.

16.   <u>No Waiver; Cumulative Remedies</u>. No failure by the Noteholder to exercise and no delay in exercising any right, remedy, or power hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, or power hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, or power. The rights, remedies, and powers herein provided are cumulative and not exclusive of any other rights, remedies, or powers provided by law.

17.   <u>Severability</u>. If any term or provision of this Note is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Note or render such term or provision invalid or unenforceable in any other jurisdiction.

18.   <u>Interpretation</u>.  Whenever used, the singular number shall include the plural, the plural the singular, and the words "Noteholder" and "Borrower" shall include their respective heirs, personal representatives, successors and assigns; provided, however, that Borrower shall in no event or under any circumstance have the right without obtaining the prior written consent of Noteholder (which consent Noteholder may grant or withhold in its sole and absolute discretion) to assign or transfer its obligations under this Note, in whole or in part, to any other person or party.

19.   <u>Relationship</u>.  The relationship of Noteholder to Borrower hereunder is strictly and solely that of lender and borrower and nothing contained in this Note or any other document or instrument now or hereafter executed and delivered in connection therewith is intended to create, or shall in any event or under any circumstance be construed as creating, a partnership, joint

venture, tenancy-in-common, joint tenancy or other relationship of any nature whatsoever between Noteholder and Borrower other than as lender and borrower.

20.     <u>Commercial Loan</u>.  Borrower represents and warrants that this Note evidences an indebtedness which is being incurred by Borrower for the sole purpose of carrying on a business or commercial enterprise.  All of the proceeds received by Borrower in connection with this Note shall be used for commercial purposes and Borrower stipulates that the Loan shall be construed for all purposes as a commercial loan and that it is made for other than personal, family or household purposes.  Without limiting the generality of the foregoing, Borrower represents and warrants to Noteholder that this Note is not subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury.

21.     <u>Excess Interest</u>.  Nothing contained in this Note shall be deemed to require the payment of interest or other charges by Borrower or any other person in excess of the amount that the Noteholder may lawfully charge under the applicable usury laws.  In the event that Noteholder shall collect moneys which are deemed to constitute interest which would increase the effective interest rate to a rate in excess of that permitted to be charged by applicable law, all such sums deemed to constitute interest in excess of the legal rate shall be credited against the principal amount of this Note then outstanding, and any excess shall be returned to Borrower.

22.     <u>Time of the Essence</u>.  Time is of the essence for all purposes in this Note.

23.     <u>Headings</u>.  The headings used in this Note are for convenience of reference only and shall not be interpreted to define, limit or describe the scope or intent of any provision in this Note.

24.     <u>Counterparts</u>. This Note and any amendments, waivers, consents, or supplements hereto may be executed in counterparts, each of which shall constitute an original, but all of which taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Note by facsimile or in electronic ("pdf" or "tif") format shall be as effective as delivery of a manually executed counterpart of this Note.

25.     <u>Electronic Execution</u>. The words "execution," "signed," "signature," and words of similar import in this Note shall be deemed to include electronic and digital signatures and the keeping of records in electronic form, each of which shall be of the same effect, validity, and enforceability as manually executed signatures and paper-based recordkeeping systems, to the extent and as provided for under applicable law, including the <u>Electronic Signatures in Global and National Commerce Act of 2000</u> (15 U.S.C. § 7001 *et seq*.), the Electronic Signatures and Records Act of 1999 (N.Y. State Tech. Law §§ 301-309), and any other similar state laws based on the <u>Uniform Electronic Transactions Act</u>.

[Signature contained on following page]

IN WITNESS WHEREOF, the Borrower has executed this Note as of August 24, 2022.

WITNESS:

SNOW JOE LLC,
a New York limited liability company

By: _____

By: _____

Name: Paul Riley

Name: Joseph Cohen

Title: Manager and CEO

ACKNOWLEDGED AND ACCEPTED BY:

NORTHROCK MINERALS LLC

By: _____

Name: Moshe Wechsler

Title: CEO and Manager

[Signature page to $4,500,000 Promissory Note]

## EXHIBIT A PAYMENT SCHEDULE

| Date | Amount Due |
|---|---|
| September 2022 | $16,875 |
| October 2022 | $16,875 |
| November 2022 | $16,875 |
| December 2022 | $16,875 |
| January 2023 | $16,875 |
| February 2023 | $16,875 |
| March 2023 | $16,875 |
| April 2023 | $16,875 |
| May 2023 | $16,875 |
| June 2023 | $16,875 |
| July 2023 | $16,875 |
| August 2023 | $16,875 |
| September 2023 | $16,875 |
| October 2023 | $16,875 |
| November 2023 | $16,875 |
| December 2023 | $16,875 |
| January 2024 | $16,875 |
| February 2024 | $16,875 |
| March 2024 | $4,500,000 |

# GUARANTY

This Guaranty ("**Guaranty**"), dated as of August 24, 2022, is made by Joseph Cohen (the "**Guarantor**"), an individual who resides at 71 Laight St., Apt 5B, New York, NY 10013, in favor and for the benefit of Northrock Minerals LLC, a New York limited liability company (together with its successors and/or assigns, as their interests may appear, the "**Lender**").

1.    **Guaranty.** In consideration of the substantial direct and indirect benefits derived by the Guarantor from the loans and other extensions of credit made by the Lender to Snow Joe LLC, a New York limited liability company, with a business address located at 221 River St., #1300, Hoboken, NJ 07030 (the "**Borrower**") under that certain Promissory Note of even date herewith in the principal amount of $4,500,000, by and between the Lender and the Borrower (as the same may be modified, amended and/or restated from time to time, the "**Note**"), the parties hereby agree as follows:

1.1    The Guarantor absolutely, unconditionally, and irrevocably guarantees, as surety, the punctual payment and performance, when due, whether at stated maturity, by acceleration, or otherwise, of all present and future obligations, liabilities, covenants, and agreements required to be observed, performed, or paid by the Borrower whether for principal, interest or otherwise under the Note (collectively, the "**Obligations**").

1.2    Notwithstanding any provision herein contained to the contrary, the Guarantor's liability with respect to the Obligations shall be limited to an amount not to exceed, as of any date of determination, the amount that could be claimed by the Lender from the Guarantor without rendering such claim voidable or avoidable under Section 548 of the Bankruptcy Code of 1978, as amended (the "**Bankruptcy Code**") or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law.

1.3    Guarantor agrees to pay the Obligations, following written notice of demand, irrespective of whether or not any one or more of the following events have occurred:  (i) the Lender has made any demand on Borrower; (ii) the Lender has taken any action of any nature against Borrower; (iii) the Lender has pursued any rights which the Lender has against any other Person who may be liable for any of the Obligations; (iv) the Lender holds or has resorted to any security for any of the Obligations; or (v) the Lender has invoked any other remedies or rights the Lender has available with respect to any of the Obligations.  The liability of Guarantor as surety and guarantor is unconditional.  Guarantor therefore agrees to pay the Obligations even if any of the Note or any part thereof, are for any reason invalid or unenforceable.  Guarantor further agrees to make full payment of the Obligations to the Lender even if circumstances exist which otherwise constitute a legal or equitable discharge of Guarantor as surety or guarantor.

2.    **Guaranty of Payment and Performance; Subordination; Waivers.**

2.1.  This Guaranty is a guaranty of payment and performance.

2.2. Guarantor waives any and all notice with respect to: (i) acceptance by the Lender of this Guaranty or the Note; and (ii) the provisions of the Note or any other instrument or agreement relating to the Obligations.

3.     Guarantor unconditionally waives any defense to the enforcement of this Agreement, including, without limitation (a) **all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, and notices of acceptance of this Agreement**; (b) any right to require the Lender to proceed against Borrower or any other guarantor at any time or to proceed against or exhaust any security held by the Lender at any time or to pursue any other remedy whatsoever at any time; (c) the defense of any statute of limitations affecting the liability of Guarantor hereunder or the liability of Borrower, or any other guarantor under the Note, or the enforcement hereof, to the extent permitted by law; (d) any defense arising by reason of any invalidity or unenforceability of (or any limitation of liability in) any of the Note or any disability of Borrower or any other guarantor or of any manner in which the Lender has exercised its rights and remedies under the Note, or any question from any cause whatsoever of the liability of Borrower, or any other guarantor without limitation on clause (c) above, (e) any defense based upon any lack of authority of the officers, directors, partners or agent acting or purporting to act on behalf of Borrower or any principal of Borrower or any defect in the formation of Borrower or any principal of Borrower; (f) any defense based upon the application by Borrower of the proceeds of the Loan for purposes other than the purposes represented by Borrower to the Lender or intended or understood by the Lender or Guarantor; (g) any defense based upon an election of remedies by the Lender, including any election to proceed by judicial or nonjudicial foreclosure of any security, whether real property or personal property security, or by deed in lieu thereof, and whether or not every aspect of any foreclosure sale is commercially reasonable, or any election of remedies, including remedies relating to real property or personal property security, which destroys or otherwise impairs the subrogation rights of Guarantor or the rights of Guarantor to proceed against Borrower or any other guarantor for reimbursement, or both; (h) any defense based upon any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in any other aspects more burdensome than that of a principal; (i) any defense based upon the election of the Lender, in any proceeding instituted under the Bankruptcy Code, of the application of Section 1111(b)(2) of the Bankruptcy Code or any successor statute; (j) any defense based upon any borrowing or any grant of a security interest under Section 364 of the Bankruptcy Code; (k) any duty of the Lender to advise Guarantor of any information known to the Lender regarding the financial condition of Borrower and all other circumstances affecting Borrower's ability to perform its obligations to the Lender, it being agreed that Guarantor assumes the responsibility for being and keeping informed regarding such condition or any such circumstances; (l) any right of subrogation, reimbursement, exoneration, contribution or indemnity, or any right to enforce any remedy which the Lender now has or may hereafter have against Borrower or any benefit of, or any right to participate in, any security now or hereafter held by the Lender; (m) Guarantor also hereby acknowledges that the Lender may institute a separate action against Guarantor for the enforcement of Guarantor's obligations, regardless of whether the Lender has exercised any power of sale or other foreclosure remedies against the Collateral; and (n) all waivable rights the Guarantor may have under any applicable provisions of the New York Uniform Commercial Code, as amended.

4.     Representations and Warranties. The Guarantor represents and warrants that the following are true and correct and that the Guarantor:

4.1     Is an adult individual and is *sui juris*.

4.2     Is not under any restraint and is not in any respect incompetent to enter into this Guaranty.

4.3     Has received and reviewed the Note.

5.     Guarantor agrees that the Lender may do any of the following without notice to Guarantor and without adversely affecting the validity or enforceability of this Guaranty or any other agreement, document or instrument given by Guarantor to the Lender in connection with this Guaranty or the Obligations, including, without limitation, any security instrument given by Guarantor to secure Guarantor's obligations under this Guaranty:  (i) release, surrender, exchange, compromise or settle the Obligations, or any part thereof; (ii) change, renew or waive the terms of the Obligations, or any part thereof; (iii) change, renew or waive the terms of any of the Note or any other note, instrument or agreement relating to the Obligations, such rights in the Lender to include, without limitation, the right to change the rate of interest charged to Borrower (in which event the Obligations shall be deemed also to include all interest at such changed rate); (iv) grant any extension or indulgence with respect to the payment or performance of the Obligations or any part thereof; (v) enter into any agreement of forbearance with respect to the Obligations, or any part thereof; (vi) release, surrender, exchange or compromise any security held by the Lender for any of the Obligations; (vii) release any person who is a guarantor or surety of the Obligations or any part thereof; and (viii) release, surrender, exchange or compromise any security held by the Lender for the liabilities of any person who is guarantor or surety for the Obligations or any part thereof.

Guarantor agrees that the Lender may do any of the above as the Lender deems to be necessary or advisable, in the Lender's sole discretion, without giving any notice to Guarantor, and that Guarantor will remain liable for full payment and performance of the Obligations.  If at any time all or any part of any payment theretofore applied by the Lender to any of the liabilities is or must be rescinded or returned by the Lender for any reason whatsoever (including, without limitation, the insolvency, bankruptcy or reorganization of Borrower), such liability shall, for the purposes of this Guaranty, to the extent that such payment is or must be rescinded or returned, be deemed to have continued in existence, notwithstanding such application by the Lender and this Guaranty shall continue to be effective or be reinstated, as the case may be, as to such liabilities, all as though such application by the Lender had not been made.

The Guarantor acknowledges that the Lender may, in its sole discretion, elect to enforce this Guaranty for the total Obligations or any part thereof, against the Guarantor without any duty or responsibility to pursue any other person and that such an election by the Lender shall not be a defense to any other action the Lender may elect to take against Guarantor.

6.     **Enforcement Costs**. If any dispute arises from this or relating to this Guaranty, the losing party agrees to pay the prevailing party all costs incurred in resolving the dispute, including court costs and reasonable attorneys' fees, whether or not any judgment has been confessed or suit has been filed.

7.     **Miscellaneous.** The Parties further agree as follows:

**7.1    Waivers, Amendments, Remedies.** No course of dealing by the Lender and no failure by the Lender to exercise, or delay by the Lender in exercising, any right, remedy, or power hereunder shall operate as a waiver thereof, and no single or partial exercise thereof shall preclude any other or further exercise thereof or the exercise of any other right, remedy, or power of the Lender. No amendment, modification, or waiver of any provision of this Guaranty and no consent to any departure by the Guarantor therefrom, shall, in any event, be effective unless contained in a writing signed by the Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. The rights, remedies, and powers of the Lender, not only hereunder, but also under any instruments and agreements evidencing or securing the Obligations and under applicable law, are cumulative and may be exercised by the Lender from time to time in such order as the Lender may elect.

**7.2    Notices.** All notices or other communications given or made hereunder shall be in writing and shall be personally delivered or deemed delivered the first business day after being delivered by electronic means to the party to receive the same at its address set forth below or to such other address as either party shall hereafter give to the other by notice duly made under this Section:

If to the Guarantor:221 River St., Suite 1300, Hoboken, NJ 07030

With a copy to: jcohen@snowjoe.com and legal@snowjoe.com

If to the Lender:

Northrock Minerals LLC
c/o Emerald Empire
777 Chestnut Ridge Rd, Suite 301
Chestnut Ridge, NY 10977
Attn: Moshe Wechsler
Email: moshe@emeraldempireinc.com

With a copy (which shall not constitute notice) to:

Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street
27th Floor
Baltimore, MD 21202
Attn:  Elliott Engel, Esq.
Email: EE@nqgrg.com

**7.3    Term; Binding Effect.** This Guaranty shall (a) remain in full force and effect until payment and satisfaction in full of all of the Obligations; (b) be binding upon the Guarantor and his executors, heirs, successors and permitted assigns; however, Guarantor shall not have any right to assign his obligations hereunder without the prior written consent of the Lender (which consent may be granted or withheld in the Lender's sole and absolute discretion); and (c) inure to the benefit of the Lender and its successors and assigns.  Upon the payment in full of the Obligations and any additional obligations under this Guaranty, (a)

this Guaranty shall terminate and (b) the Lender will, upon the Guarantor's request and at the Guarantor's expense, execute and deliver to the Guarantor such documents as the Guarantor shall reasonably request to evidence such termination, all without any representation, warranty, or recourse whatsoever.

      **7.4**    **Satisfaction of Obligations.** For all purposes of this Guaranty, the payment in full of the Obligations shall be conclusively deemed to have occurred when the Obligations shall have been paid.

      **7.5**    **Severability.** If any term or provision of this Guaranty is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Guaranty or render such term or provision invalid or unenforceable in any other jurisdiction.

      **7.6**    **Counterparties, Execution.** This Guaranty may be executed in any number of counterparts and by the different signatories hereto on separate counterparts, each of which, when so executed, shall be deemed an original, but all such counterparts shall constitute but one and the same instrument. This Guaranty may be executed by facsimile signature and delivered by facsimile transmission.

      **7.7**    **Governing Law.** This Guaranty and any claim, controversy, dispute, or cause of action (whether in contract or tort or otherwise) based upon, arising out of, or relating to this Guaranty and the transactions contemplated hereby shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to any principles of conflicts of laws.

      **7.8**    **Submission to Jurisdiction.** The parties irrevocably and unconditionally agrees that they will not commence any action, litigation, or proceeding of any kind whatsoever, whether in law or equity, or whether in contract or tort or otherwise, against the other party, in any way relating to this Guaranty or the transactions contemplated hereby, in any forum other than the courts of the State of New York sitting in Rockland County and of the United States District Court of the Southern District of New York, and any appellate court from any thereof, and each of the parties hereto irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees that any such action, litigation, or proceeding may be brought in any such New Jersey State court or, to the fullest extent permitted by applicable law, in such federal court. Each of the parties hereto agrees that a final judgment in any such action, litigation, or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Nothing herein or in the Note shall affect any right that the Lender may otherwise have to bring any action or proceeding relating to this Guaranty against the Guarantor or its properties in the courts of any jurisdiction.

      **7.9**    **Waiver of Venue.** The parties irrevocably and unconditionally waive, to the fullest extent permitted by applicable law, any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court referred to in Section 7.8. Each of the parties hereto hereby irrevocably waives, to the fullest extent permitted by applicable

law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

**7.10    Service of Process.** Each party hereto irrevocably consents to the service of process in the manner provided for notices in Section 7.2 and agrees that nothing herein will affect the right of any party hereto to serve process in any other manner permitted by applicable law.

7.11    <u>Waiver of Jury Trial.</u> EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS GUARANTY OR THE NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY. EACH PARTY HERETO (A) CERTIFIES THAT NO AGENT, ATTORNEY, REPRESENTATIVE, OR ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT SEEK TO ENFORCE THE FOREGOING WAIVER IN THE EVENT OF LITIGATION, AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS GUARANTY BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY GUARANTOR AND GUARANTOR ACKNOWLEDGES THAT NEITHER THE LENDER NOR ANY PERSON ACTING ON BEHALF OF THE LENDER HAS OR HAVE MADE ANY REPRESENTATIONS OF FACT TO INDUCE THIS WAIVER OF TRIAL BY JURY OR IN ANY WAY TO MODIFY OR NULLIFY ITS EFFECT. GUARANTOR FURTHER ACKNOWLEDGES THAT GUARANTOR HAS BEEN REPRESENTED (OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS GUARANTY AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, SELECTED OF GUARANTOR'S OWN FREE WILL, AND THAT GUARANTOR HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.   GUARANTOR AGREES THAT THE GUARANTEED OBLIGATIONS EVIDENCED BY THIS GUARANTY ARE EXEMPTED TRANSACTIONS UNDER THE TRUTH-IN-LENDING ACT, 15 U.S.C. SECTION 1601, ET SEQ.

7.12    <u>Legal Counsel. Guarantor acknowledges and agrees that it has had the opportunity to consult with its own legal counsel prior to entering into this Guaranty.</u>

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have executed this Guaranty as of the date first above written.

WITNESS:                                           GUARANTOR:


By: _____        By: _____
Name: Paul Riley                               JOSEPH COHEN


ACCEPTED AND AGREED TO:

Northrock Minerals LLC

By: _____
Name: Moshe Wechsler
Title: Manager and CEO

# AGREEMENT

This Agreement (the "**Agreement**") is made as of the 14th day of November, 2022, and is by and among (a) Snow Joe, LLC, a New York limited liability company ("**Snow Joe**"), (b) Joseph Cohen ("**Cohen"**), and (c) Northrock Minerals LLC, a New York limited liability company (the "**Creditor**").  Snow Joe, Cohen and Creditor are sometimes collectively referred to herein as, the "**Parties**" and each as a "**Party**".

## W I T N E S S E T H:

**WHEREAS**, unrelated to any of Snow Joe's or Cohen's obligations to Creditor under the promissory note (the "**Note**") or Cohen's guaranty thereof (the "**Guaranty**"), both dated August 24, 2022, Snow Joe owes the Creditor an aggregate of $1,260,661.71 in connection with Snow Joe's obligations for the items listed in **Schedule A** (together with any interest and late fees required under this Agreement, collectively, the "**Claims**"), including packaging (empty roll stock bags), third party finished bags, and payroll that Snow Joe owes to Creditor (collectively, the "**Select Charges**"); and

**WHEREAS,** Snow Joe seeks to pay the Claims to the Creditor pursuant to the modified terms set forth herein; and

**WHEREAS,** the Parties have determined that the execution of this Agreement is in their respective best interests.

**NOW, THEREFORE,** in consideration of the mutual covenants, representations, warranties, and promises of the Parties, the receipt and legal sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the Parties represent, warrant, covenant and agree as follows:

4877-1323-7054, v. 5 / 7838.31

1.      <u>Payment</u>.  Snow Joe shall pay the Creditor its Claims in weekly installments (each a "**Payment**", and collectively, the "**Payments**") beginning on the first Monday following execution of this Agreement pursuant to the Payment Schedule attached as **<u>Schedule B</u>** hereto. Notwithstanding the foregoing, the value of the Creditor's Claims and the corresponding Payments and Payment Schedule are contingent upon Snow Joe's confirmation of the Select Charges. To the extent that the Select Charges are verified to be for amounts less than listed on Schedule B, the Claims, Payments, and Payment Schedule will be adjusted to reflect a pro rata reduction in each Payment. The Payments and any interest and late fees required under this Agreement shall be in complete satisfaction of the Claims that Snow Joe owes to the Creditor.

2.      <u>Interest on Claims; Late Payment</u>. The unpaid portion of the Claims shall bear simple interest at the rate of ten percent (10%) per annum from the due date of the first Payment in this Agreement, which interest shall accrue, until payment of the Claims in full, and which interest shall constitute a part of the Creditor's Claims.  If any Payment is made after ten (10) business days from the date required under this Agreement, a late fee equal to five percent (5%) of the amount of such Payment shall be payable by Snow Joe to Creditor.

3.      <u>Cohen's Guaranty</u>. Cohen personally, absolutely, unconditionally, and irrevocably guarantees, as surety, the punctual payment and performance, when due, whether at the stated payment date, by acceleration, or otherwise, of all present and future obligations, liabilities, covenants, and agreements required to be observed, performed, or paid by Snow Joe under this Agreement, whether principal, interest, late fees or otherwise.

4877-1323-7054, v. 5 / 7838.31

No written demand for payment by Creditor shall be required in connection with the foregoing guaranty by Cohen.

4.  <u>Reinstatement of Claims Amount</u>.  In the event that the Creditor does not receive the full amount of its Claims pursuant to this Agreement, the Creditor will retain all rights and remedies available to it that it had as if this Agreement had not existed and the Creditor shall be entitled to assert the full amount of its original Claims, less any Payments, in any subsequent action or proceeding instituted to collect its Claims.

5.  <u>Release of Claims</u>.  Upon full payment of the Claims, the Creditor, together with and on behalf of its predecessors and subsidiaries, divisions, parents, assigns and its respective subsidiaries and affiliates, the officers, directors, employees, partners, attorneys and agents, past and present, of and for each of the foregoing, together with its respective heirs, administrators, executors, successors and assigns and any and all other persons, firms and corporations who have acted or who might be claimed to have acted, in concert with, or on behalf of it, fully and unconditionally release and discharge Snow Joe and Cohen, together with and on behalf of its predecessors and subsidiaries, divisions, parents, assigns and their respective subsidiaries and affiliates, the officers, directors, employees, partners, attorneys and agents, past and present, of and for each of the foregoing, together with their respective heirs, administrators, executors, successors and assigns and any and all other persons, firms and corporations who have acted or who might be claimed to have acted, in concert with, or on behalf of them or any of them (collectively, the "**Released Parties**"), from any and all claims, rights, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, executions and demands whatsoever in connection with the

-3-

Claims, in law or equity, whether known or unknown, contingent or fixed, that the Creditor ever had, now has, or hereafter can, shall or may have against the Released Parties on account of the Claims.  For the avoidance of doubt, the foregoing provisions of this Section 5 are not intended in any way to release or otherwise affect Creditor's rights under the Note or the Guaranty.

6.  <u>Payment for Inventory Under APA</u>.  Snow Joe and Creditor are parties to that certain Asset Purchase Agreement dated August 3, 2022 (the "**APA**"). Notwithstanding anything contained in the APA to the contrary, Snow Joe agrees that it shall submit a purchase order (each, a "**Purchase Order**") to Creditor and make payment in full for any additional Prepaid Inventory (as defined in the APA) requested to be delivered to or received by Snow Joe pursuant to such Purchase Order, and that Snow Joe shall have no right to take delivery or receipt of any additional Prepaid Inventory from Creditor relating to a Purchase Order until a Purchase Order is submitted and payment in full for the applicable Purchase Order is received by Creditor.  Snow Joe acknowledges and agrees that any failure to request delivery or receipt of any additional Prepaid Inventory shall not excuse its obligation to purchase all of the Prepaid Inventory under the APA.

7.  <u>Events of Default</u>.  The following shall be deemed an event of default under this Agreement (an "**Event of Default**"):  Snow Joe's failure to make any payment required to be made hereunder when due or other failure of Snow Joe to strictly comply with the terms of this Agreement, which failure continues unremedied for a period of ten (10) business days after Creditor's notice to Snow Joe of Snow Joe's failure to make said payment, except, however, that the Parties agree that the foregoing notice and cure period

-4-

shall only be applicable <u>one time</u> and any subsequent failure shall not be subject to the foregoing notice and cure requirements and shall be immediately be deemed an Event of Default without any other obligation on the part of Creditor.

8.     <u>Remedies</u>.  Upon the occurrence of an Event of Default by Snow Joe, without further notice, the Creditor shall be entitled exercise all rights and remedies at law or in equity.  After an Event of Default by the Creditor under this Agreement, Snow Joe's remedies shall include, but not be limited to, seeking specific performance of the terms of this Agreement.  If an Event of Default following the date of this Agreement arises out of Snow Joe's failure to make or cause to be made any of the Payments, then any Payments made to the Creditor prior to such Event of Default shall be retained by the Creditor and credited against and reduce the amounts due under this Agreement.

9.     <u>Fees and Expenses</u>. Except as otherwise expressly provided, each Party to this Agreement shall bear all expenses of fulfilling its duties and obligations hereunder.

10.     <u>Stay of Collection</u>. Except following the occurrence of an Event of Default, the Creditor represents, warrants and covenants that as long as this Agreement is in effect, it will not commence or prosecute any action or proceeding against Snow Joe in connection with any Claims, levy any execution, attachment or any process against the property of Snow Joe in connection with any Claims or file or join in any petition, or in any proceeding under Title 11 of the United States Code or its Amendments, or any other proceeding having for its object the appointment of a receiver, trustee, fiscal agent or similar officer for Snow Joe in connection with any Claims.

4877-1323-7054, v. 5 / 7838.31

11.    <u>Due Authority</u>.  Each of the Parties has the full power and authority, and legal capacity, to enter into and perform under this Agreement.  The execution and performance of this Agreement will not cause any of the Parties to violate any law or contract to which they are subject or bound.  The Agreement shall be binding on the Parties and their respective direct and indirect affiliates and parent corporations, subsidiaries, divisions, successors, predecessors, shareholders and assigns, and their present and former officers, directors, legal representatives, employees, agents, and attorneys, and their heirs, executors, administrators, trustees, successors and assigns, enforceable in accordance with its terms.

12.    <u>Counterpart Execution</u>.  This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which taken together shall constitute a single agreement.  Facsimile, photocopy, pdf and other electronic signatures shall be deemed originals, including any execution by DocuSign or similar software.

13.    <u>Governing Law, Venue; Personal Jurisdiction</u>.  This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to its conflict of law provisions.  Subject to the provisions of Section 15 below, the venue for any dispute arising under this Agreement shall be brought before the state or federal courts located in New York County, New York. Subject to the provisions of Section 15, below, the Parties irrevocably consent to personal jurisdiction by any state or federal court located in New York County, New York and their corresponding appellate courts.

14.    <u>Arbitration</u>.

14.1.   Any dispute or claim between the Parties arising out of or relating to this Agreement, or the breach, termination, enforcement, interpretation, or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be submitted to final and binding arbitration in New York, New York before one arbitrator. The arbitration shall be administered by JAMS in accordance with JAMS Streamlined Arbitration Rules and Procedures in effect at that time (or, if JAMS is no longer in existence, then administered by the American Arbitration Association under the Expedited Procedures of its Commercial Arbitration Rules in effect at that time; and if none of the preceding remains in existence, by the expedited arbitration procedures of any succeeding or substantially similar dispute resolution organization).   A single arbitrator shall be selected pursuant to such rules and procedures (the "**JAMS Arbitrator**").   The Parties agree that: (i) the speedy resolution of any disputes or claims between them pursuant to this arbitration clause is a mutual and material inducement to enter into this Agreement; (ii) arbitration pursuant to this arbitration clause is intended to be the sole and exclusive dispute resolution mechanism of the Parties concerning this Agreement, and in no event will a party have the right to bring any action at law or in equity or otherwise seeking damages or any other relief with respect to any such dispute or claim (however, this arbitration clause shall not preclude the Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction in New York, New York); (iii) this arbitration clause and all awards hereunder are to be enforced in the New York Supreme Court, New York County; and (iv) the non-prevailing party(ies) in such arbitration shall pay the prevailing party(ies) all costs and expenses reasonably incurred by the prevailing

4877-1323-7054, v. 5 / 7838.31

party(ies), including reasonable attorneys' fees and disbursements, and shall pay any fees and disbursements due to JAMS and the JAMS Arbitrator and, to the extent the "prevailing" party(ies) have not been clearly identified, each party will bear its own costs and expenses and the Parties will pay their equal share of any fees and disbursements due to JAMS and the JAMS Arbitrator.

   14.2. The power of the JAMS Arbitrator is limited as follows: (a) the JAMS Arbitrator shall apply and be bound by the law of the state of New York; (b) the JAMS Arbitrator shall be bound by the provisions of this Agreement and shall not have the power to add to, subtract from, disregard, or otherwise modify such provisions; (c) the JAMS Arbitrator shall consider only the specific issues submitted to him/her for resolution; (d) the JAMS Arbitrator shall be directed to make a determination as to the "prevailing" party(ies) or make a specific determination that there is no prevailing party; and (e) if the JAMS Arbitrator determines that there is/are prevailing party(ies), the JAMS Arbitrator shall award the prevailing party(ies) costs and expenses reasonably incurred by the prevailing party(ies), including reasonable attorneys' fees and disbursements, and shall direct the non-prevailing party(ies) to pay any fees and disbursements due to JAMS and the JAMS Arbitrator.  The non-prevailing party(ies) shall also pay the costs and expenses reasonably incurred by the prevailing party(ies) in confirming and/or enforcing the arbitration award, including reasonable attorneys' fees and disbursements.  The JAMS Arbitrator shall have the authority to, and may, order specific performance to remedy any breach of the terms of this Agreement.

4877-1323-7054, v. 5 / 7838.31

15.    <u>Waiver of Jury Trial</u>. THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEPLATED HEREBY, WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY.

16.    <u>Integration; Modification</u>.  This Agreement and the documents referenced herein contains the entire agreement between the Parties, and supersedes all prior oral or written agreements with respect to the subject matter hereof.  This Agreement may only be modified in a writing signed by all of the Parties or their duly appointed agents or representatives.

17.    <u>Construction of Agreement</u>.  The Parties agree that the terms and language of this Agreement were the result of negotiations between the Parties and, as a result, there shall be no presumption that ambiguities, if any, in this Agreement shall be resolved against any party; further, any controversy over the construction of this Agreement shall be decided neutrally, in light of its conciliatory purposes, and without regard to events of authorship or negotiation.  As used in this Agreement, the term "**Person**" means any individual, general partnership, limited partnership, corporation, joint venture, trust, business trust, cooperative or association, and the respective heirs, executors, administrators, successors and assigns of such person where the context so admits.

18.    <u>Notice</u>.  Any notice required to be given under this Agreement shall be in writing and shall be effective if addressed to the Parties at the following addresses, either

-9-

on delivery if delivery is made by hand, one day after delivery to an overnight courier

delivery service for next day delivery or made by facsimile (provided service is also made

in an additional manner set forth herein), or three days after posting by certified mail return

receipt requested, or if by electronic mail, on the date sent:

> If to Snow Joe or Cohen:
>
>> Joseph Cohen
>> 221 River Street, Suite 1300
>> Hoboken, NJ 07030
>> jcohen@snowjoe.com
>>
>> With an email copy to: legal@snowjoe.com and
>>                         accounting@snowjoe.com
>
> If to the Creditor:
>
>> Moshe Wechsler
>> 777 Chestnut Ridge Road, Suite 301
>> Chestnut Ridge, NY 10977
>> moshe@emeraldempireinc.com
>>
>> With an email copy to: EE@nqgrg.com and BAF@nqgrg.com

19.     __No Waiver__.  No consent or waiver by any party, express or implied, to or of

any breach or default by the other in the performance of its obligations hereunder shall be

deemed or construed to be a consent or waiver to or of any other breach or default in the

performance by such other party of the same or any other obligation of such party.  Failure

on the part of any party to complain of any act or failure to act by the other party or to

declare the other party in default, irrespective of how long such failure continues, shall not

constitute a waiver by such party of its rights hereunder.

4877-1323-7054, v. 5 / 7838.31

20.   <u>Litigation Costs</u>.  In the event that any dispute between the Parties relating to this Agreement is litigated or arbitrated, the prevailing party shall be entitled to be receive its reasonable attorneys' fees and litigation costs from the non-prevailing Party after entry of a final, non-appealable judgment.

[Signatures contained on following page]

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be executed and delivered by their duly authorized officers or agents as set forth below as of the date first written above.

**SNOW JOE LLC**

By: _____
      Name: Joseph Cohen
      Title:  CEO and Manager

**JOSEPH COHEN**

By: _____
      Name: Joseph Cohen, Individually

**NORTHROCK MINERALS LLC**

By: _____
      Name: Moshe Wechsler
      Title:  CEO and Manager

4877-1323-7054, v. 5 / 7838.31

## SCHEDULE A

## CHARGES SUBJECT TO AGREEMENT

| Item | Quantity | Dollar Value |
|---|---|---|
| Empty Roll Stock Bags | 966,316 | $ 417,762.76 |
| Rent in Bayonne - September, October, November | 3 | $ 36,000.00 |
| Payroll - 08/17/2022 - 10/04/2022 | | $ 49,669.34 |
| Third-party Finished Bags | 16,418 | $ 90,566.91 |
| Allied Salt - contract deposit | | $ 720,793.67 |
| Payroll - 10/05/2022 - 10/31/2022 | | $ 45,869.03 |
| **Less: Payment Previously Received** | | **($100,000)** |
| **Aged Receivable Total** | | **$ 1,260,661.71** |

4877-1323-7054, v. 5 / 7838.31

## **SCHEDULE B**

## **PAYMENT SCHEDULE**

4877-1323-7054, v. 5 / 7838.31

**Loan Date: 11/14/2022**
**Principal: $1,260,661.71**
**Interest Rate: 10.00%**
**Payment Interval: Weekly**
**# of Payments: 26**
**Payment: $49,755.86**

## Schedule of Payments
Please allow for slight rounding differences.

| Pmt # | Date | Principal | Interest | Payment | Balance |
|---|---|---|---|---|---|
| 1 | Nov 21st 2022 | $47,331.51 | $2,424.35 | $49,755.86 | $1,213,330.20 |
| 2 | Nov 28th 2022 | $47,422.53 | $2,333.33 | $49,755.86 | $1,165,907.67 |
| 3 | Dec 5th 2022 | $47,513.73 | $2,242.13 | $49,755.86 | $1,118,393.94 |
| 4 | Dec 12th 2022 | $47,605.10 | $2,150.76 | $49,755.86 | $1,070,788.84 |
| 5 | Dec 19th 2022 | $47,696.65 | $2,059.21 | $49,755.86 | $1,023,092.19 |
| 6 | Dec 26th 2022 | $47,788.38 | $1,967.48 | $49,755.86 | $975,303.81 |
| Total | 2022 | $285,357.90 | $13,177.26 | $298,535.16 | $975,303.81 |
| 7 | Jan 2nd 2023 | $47,880.28 | $1,875.58 | $49,755.86 | $927,423.53 |
| 8 | Jan 9th 2023 | $47,972.35 | $1,783.51 | $49,755.86 | $879,451.18 |
| 9 | Jan 16th 2023 | $48,064.61 | $1,691.25 | $49,755.86 | $831,386.57 |
| 10 | Jan 23rd 2023 | $48,157.04 | $1,598.82 | $49,755.86 | $783,229.53 |
| 11 | Jan 30th 2023 | $48,249.65 | $1,506.21 | $49,755.86 | $734,979.88 |
| 12 | Feb 6th 2023 | $48,342.44 | $1,413.42 | $49,755.86 | $686,637.44 |
| 13 | Feb 13th 2023 | $48,435.40 | $1,320.46 | $49,755.86 | $638,202.04 |
| 14 | Feb 20th 2023 | $48,528.55 | $1,227.31 | $49,755.86 | $589,673.49 |
| 15 | Feb 27th 2023 | $48,621.87 | $1,133.99 | $49,755.86 | $541,051.62 |
| 16 | Mar 6th 2023 | $48,715.38 | $1,040.48 | $49,755.86 | $492,336.24 |
| 17 | Mar 13th 2023 | $48,809.06 | $946.80 | $49,755.86 | $443,527.18 |
| 18 | Mar 20th 2023 | $48,902.92 | $852.94 | $49,755.86 | $394,624.26 |
| 19 | Mar 27th 2023 | $48,996.97 | $758.89 | $49,755.86 | $345,627.29 |
| 20 | Apr 3rd 2023 | $49,091.19 | $664.67 | $49,755.86 | $296,536.10 |
| 21 | Apr 10th 2023 | $49,185.60 | $570.26 | $49,755.86 | $247,350.50 |
| 22 | Apr 17th 2023 | $49,280.19 | $475.67 | $49,755.86 | $198,070.31 |
| 23 | Apr 24th 2023 | $49,374.96 | $380.90 | $49,755.86 | $148,695.35 |
| 24 | May 1st 2023 | $49,469.91 | $285.95 | $49,755.86 | $99,225.44 |
| 25 | May 8th 2023 | $49,565.04 | $190.82 | $49,755.86 | $49,660.40 |
| 26 | May 15th 2023 | $49,660.40 | $95.50 | $49,755.90 | $0.00 |
| Total | 2023 | $975,303.81 | $19,813.43 | $995,117.24 | $0.00 |
| **Grand Total** | | **$1,260,661.71** | **$32,990.69** | **$1,293,652.40** | **$0.00** |

-15-

4877-1323-7054, v. 5 / 7838.31

4877-1323-7054, v. 5 / 7838.31



**Elliott Engel**

Admitted in Maryland, New York, and D.C.

T: 410.332.8575  |  F: 410.332.8577  |  ee@nqgrg.com

February 14, 2023

<u>**VIA EMAIL AND FEDERAL EXPRESS**</u>

Mr. Joseph Cohen                                          Accounts Payable
221 River Street, Suite 1300                          221 River Street, #1300
Hoboken, NJ 07030                                       Hoboken, NJ 07030-5990

jcohen@snowjoe.com                                   ap@snowjoe.com
legal@snowjoe.com                                    legal@snowjoe.com

> Re:   *The following loan documents: (i) Promissory Note in the principal amount of $4,5000,000 dated August 24, 2022 by Snow Joe LLC ("**Borrower**") in favor of Northrock Minerals LLC ("**Lender**") (hereinafter, the "**Promissory Note**"), guaranteed by that certain Guaranty dated of even date by Joseph Cohen ("**Guarantor**") and (ii) Agreement dated November 14, 2022 by and among Borrower, Guarantor, and Lender (the "**Agreement**")*

To Whom This May Concern:

This Firm has been retained to represent Lender in connection with the above-referenced Promissory Note and Agreement and the various documents relating thereto and executed in connection therewith, including the Guaranty (collectively, the "**Loan Documents**"). The purpose of this letter is to give Borrower and Guarantor formal notice and an opportunity to cure the defaults under the Loan Documents prior to Lender exercising its remedies against Borrower and Guarantor under the Loan Documents.

As you know, Borrower defaulted on the Loan Documents by failing to make the following payments as required: (i) the payments due on January 30, 2023, February 6, 2023, and February 13, 2023 each in the amount of $49,755.56 due under the Agreement and (ii) the payment due on February 1, 2023 in the amount of $16,875 due under the Promissory Note, all of which are guaranteed by Guarantor.

Pursuant to the terms of the Loan Documents, Lender is entitled to certain rights and remedies in the event that Borrower and Guarantor fail to cure the Events of Default. Specifically, under Section 7 of the Promissory Note:

> Upon the occurrence of an Event of Default: (a) the entire unpaid principal amount of the Loan together with all interest accrued and unpaid thereon and all other amounts which may be due and payable under this Note shall, at the option of the Noteholder, without

**NEUBERGER QUINN GIELEN RUBIN GIBBER** P.A.

Mr. Joseph Cohen
February 9, 2023
p. 2

notice of any kind, immediately become due and payable by Borrower to Noteholder; (b) Noteholder shall have all of the rights, powers and remedies available under the terms of this Note and all applicable laws; and (c) "Default Interest" at the rate of eighteen percent (18%) per annum shall accrue on any unpaid Principal Amount, until all of the outstanding principal amount of the Loan and interest and fees due hereunder have been paid.

Similarly, upon default by Borrower under the Agreement, Lender is entitled to all rights and remedies provided in, *inter alia*, Sections 4, 7-9 of the Agreement against Borrower and Guarantor. The Promissory Note and Agreement also provide for late fees and enforcement costs and expenses.

Finally, please be advised that nothing contained in this letter is intended as a waiver or release of any Event of Default not set forth above or of any of the terms or provisions of the Loan Documents, including, without limitation, the requirement that Borrower pay on demand any amounts owed under the instruments evidencing the same. The Lender reserves all rights and remedies available to it under the Loan documents, and applicable law, all of which are expressly hereby reserved. No discussions between the Lender and any of the parties to the Loan Documents concerning this notification, other loan relationships between the Lender and any of the other parties, or any other matter shall imply an agreement on the part of the Lender to waive any of its rights and remedies or to forbear from taking any action authorized by the Loan Documents or applicable law, whether or not such discussions may be continuing. The acceptance of any partial payment of any of the obligations owed under the Loan Documents shall not be deemed a waiver or limitation of any of the Lender's rights reserved herein as to the full amount of any unpaid balance. Any delay or forbearance by the Lender in the enforcement of pursuit of any of its rights and remedies under the Loan Documents or applicable law shall not constitute a waiver thereof, nor shall it be a bar to the exercise of the Lender's rights or remedies at a later date.

I look forward to your or your counsel's prompt response.

Very truly yours,

*/s/ Elliott Engel*

Elliott Engel

EE/sch

cc:  legal@snowjoe.com
     accounting@snowjoe.com

2/14/23, 4:56 PM

HUD-L-000338-24   01/26/2024 2:35:30 PM   Pg 3 of 3   Trans ID: LCV2024228831
Case 1:24-cv-03155-JSR   Document 1-1   Filed 02/29/24   Page 46 of 46
FedEx Ship Manager - Print Your Label(s)



**After printing this label**:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.