UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

NORTHROCK MANAGEMENT LLC,
f/k/a NORTHROCK MINERALS LLC,

        *Plaintiff/Counterclaim-Defendant*,

– against –

JOSEPH COHEN and SNOW JOE LLC,

        *Defendants/Counterclaim-Plaintiffs*.

Case No. 24-cv-3155 (JSR)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

SNOW JOE LLC,

        *Third-Party Plaintiff*,

– against –

MOSHE WECHSLER,

        *Third-Party Defendant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## **DECLARATION OF JOSEPH COHEN**

1. I am a named Defendant/Counterclaim-Plaintiff in the above-captioned matter and the sole member of co-Defendant/Counterclaim-Plaintiff and Third-Party Plaintiff Snow Joe LLC ("Snow Joe").

2. I submit this Declaration, based on my personal knowledge, in opposition to the motion for summary judgment filed by Plaintiff/Counterclaim-Defendant Northrock Management LLC, f/k/a Northrock Minerals LLC ("Northrock") and Third-Party Defendant Moshe Wechsler ("Moshe").

3. The purpose of this Declaration is to supplement the factual record on the motion for summary judgment filed by Northrock and Moshe.

4. Northrock's unreasonable delay in providing Snow Joe with its Home Depot vendor number deprived Snow Joe of valuable cash flow at the start of the 2022-23 ice melt season. Without the vendor number, Snow Joe could not process Home Depot purchase orders. If Snow Joe had timely received the Home Depot purchase orders, it could have borrowed additional funds to purchase materials and meet other expenses to satisfy its supply obligations as the season progressed.

5. Northrock, however, ensured that this would be impossible by delaying Snow Joe's receipt of the Home Depot purchase orders. Moshe and Northrock took advantage of this situation to squeeze Snow Joe by requiring that it pay for inventory upon receipt, as opposed to the "net-30" terms provided for in the Asset Purchase Agreement ("APA") between Snow Joe and Northrock. Based on the APA's "net-30" terms, Snow Joe would have had 30 days to pay Northrock for the inventory it received, thereby bolstering Snow Joe's cash flow.

6. Prior to Snow Joe and Northrock entering into the APA, Moshe verbally promised me on multiple occasions that the calcium chloride ("calcium") that was on order from Egypt would arrive in the United States in time for Snow Joe to meet Home Depot's timing requirements. Moshe had to know that these promises were false when he made them, because it turns out that the calcium was still in Egypt at the time.

7. Moshe's suggestion at his deposition that Snow Joe could have avoided the delay in providing Home Depot with ice melt for the 2022-23 season by purchasing separate calcium on the open market was completely unworkable from a logistical standpoint.

8. The calcium coming from Egypt was already packaged in 50-pound bags that were ready for delivery to Home Depot to be sold to its customers "as is." Even if Snow Joe could have purchased replacement calcium on the open market to make up for Northrock's delays, it still

would have had to find a manufacturer to fabricate the bags and then obtain equipment to bag the loose calcium before it could be shipped to Home Depot. Doing so would have taken more time than waiting for the calcium to arrive from Egypt.

9. Prior to entering into the APA, Moshe assured me verbally on multiple occasions that the quality of Northrock's product, in particular the calcium, was extremely high and that Northrock had received very few returns or charge backs for defective product from Home Depot or other customers. Indeed, this representation was one of Moshe's major selling points and it was definitely part of the deal.

10. Nevertheless, a significant portion of the product that Northrock did provide to Snow Joe was egregiously substandard and unsellable. I raised these concerns verbally with Moshe on multiple occasions who promised to reach some equitable arrangement, which led Snow Joe to continue to make partial payments in good faith. In hindsight, it is clear that Moshe was merely stringing Snow Joe along and had no intention of reaching a fair accommodation.

11. Snow Joe's First Amended Answers and Objections to Plaintiff's First Set of Interrogatories contain a damages calculation that is premised on Snow Joe's net income. Those net income calculations incorporate returns which contain charge backs for defective product. I did not recall this fact during my deposition.

12. All of the communications to which I am a party that are Exhibits to Snow Joe's and my opposition to Northrock and Moshe's summary judgment motion are true and correct copies of what they purport to be.

13. All of the agreements to which I am a signatory that are Exhibits to Snow Joe's and my opposition to Northrock and Moshe's summary judgment motion are true and correct copies of what they purport to be.

14. Unless otherwise indicated, any records of Snow Joe that are Exhibits to Snow Joe's and my opposition to Northrock and Moshe's summary judgment motion are true and correct copies of what they purport to be; they were made at or near the time of the events recorded; the information was transmitted by a person with knowledge of the events; the documents were kept in the course of Snow Joe's regularly conducted business activity; and it was the ordinary course of Snow Joe's business activity to create the document.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 15th day of November, 2024, in the State of New York, County of New York.

JOSEPH COHEN